A. L. SPEARS, Guardian v. GEO. F. SMITH et al.

PLEADINGS AND PRACTICE. *Liability of justices of county court. Negligence. Loss.* To sustain an action against justices of the county court for accepting a guardian's bond with only one surety instead of requiring two or more sureties as prescribed by statute, there must be proof of actual loss by reason of the act or omission, otherwise the recovery would only be for nominal damages.

FROM MARION.

Appeal from the Chancery Court at Jasper. W. W. BRADFORD, Ch.

SPEARS & SPEARS for complainant.

F. V. BROWN for defendant.

COOPER, J., delivered the opinion of the court.

Bill filed October 8, 1875, by complainant Spears, as guardian of Emma L. Havner, an infant, against G. F. Smith, the former guardian, and Wm. O. Patton, the only surety on the guardian bond, for an account of the guardianship, and against E. D. Tate, B. Lasater and H. L. Bible as members of the county court who approved Smith's bond as guardian, to hold them liable for the failure to require two or more sureties as required by statute. The chancellor, on final hearing, rendered a decree against Smith and Patton for the amount found due from the guardian to his

ward, and dismissed the bill as to the other defendants, charging them, however, with the costs of their branch of the case. The complainant appealed from so much of the decree as dismissed his bill against the justices of the county court.

On February 9, 1864, O. Havner died intestate, leaving a widow and ten children, among whom were Nancy B. Havner and the complainant Emma. In June, 1865, M. B. Havner, one of the intestate's sons, was appointed and qualified as administrator of his father's estate. In his settlements with the county court, the last of which was made March 1, 1869, he claimed and obtained credit for $128 paid to the guardian of complainant as her share of her father's personal estate. On the day of the last settlement, the former guardian having resigned, G. F. Smith was appointed guardian of complainant and her sister Nancy B., and qualified by giving bond, with Patton as surety, in the penalty of $700, conditioned "to well and truly as such guardian perform all the duties which may be required by law." The defendants Tate, Lasater and Bible constituted the quorum court who took and approved the bond.

In the meantime, on July 11, 1867, M. B. Havner, with other adult heirs of the intestate, filed a bill for the partition of the lands of the estate, and obtained a decree ordering the partition, and appointing commissioners for the purpose. The commissioners made a partition of the lands, and reported the result to the court. On February 19, 1870, Smith, on behalf of his wards, filed a bill in the nature of a cross-bill

in the partition suit, attacking the settlement of the administrator, and asking that the lands be sold for division, upon the ground that they were not susceptible of equal partition. Such proceedings were had in the cause that the lands were sold, and the proceeds divided among the heirs. Between June 14, 1872, and April 2, 1875, Smith, as guardian, received of these proceeds as the share of his ward, the complainant, $605.42. He had previously received from the former guardian $128, her share of the personalty. He was removed from the guardianship in October, 1875.

It will be seen from the foregoing statement of facts that at the time of the execution and acceptance of the bond of the defendant Smith as guardian, on March 1, 1869, the estate of the ward consisted of $128, her share of her father's personalty, and an undivided interest in her father's realty, which had been ordered to be partitioned. The penalty of the bond was sufficient to secure the personal estate of the ward, and leave a small margin for the rents of the realty, if any. The record does not show that the lands, although valuable, yielded rent, and the penalty of the bond was, therefore, sufficient for the protection of the ward's estate. The justices of the county court could not be required to know that the lands, which at the time of the appointment of the guardian were ordered to be partitioned, would subsequently be sold for division under the proceedings commenced nearly a year thereafter. The only fault which can be imputed to the justices was in accepting a bond from the guardian with only one surety.

The requirement of a statute that two or more sureties shall be taken upon a bond is, as a general rule, merely directory, and a bond with one surety would be good. The officer accepting it could not be proceeded against as if he had failed to take any bond: *Johnson* v. *Williams*, 2 Tenn., 178; *Foster* v. *Blount*, 1 Tenn., 343. But it is altogether another question whether the officer would not be liable to the party aggrieved for the damages sustained if in fact a loss occurred by reason of the failure to require the number of sureties fixed by the statute. It would be a plain violation of duty not to comply with the direction of the statute which is positive in its terms.

Previous to the Code, the act of 1762, ch. 5, sec. 5, made the justices of the county court appointing the guardian liable for all loss or damage sustained by the ward by reason of their committing his estate to a guardian without taking good and sufficient security in the first instance. The act was not very effective for the purpose intended: *Strong* v. *Harris*, 3 Hum., 451. Its provisions were not brought forward into the Code. The duties prescribed by the Code in relation to the taking of the bonds of guardians are, however, ministerial, not judicial, and for their violation an action on the case may be maintained by the party injured. To maintain such an action the conduct of the justices must be alleged to have been willful and malicious, and the averment must be supported by proof of conduct from which malice or corrupt motive may be implied: *Boyd* v. *Ferris*, 10 Hum., 406.

The complainant alleges in his bill, "on information and belief," that at the time his bond as guardian was executed, Smith was insolvent, and that his surety, Patton, was insolvent "or not of sufficient property to secure the amount of the bond." It is further alleged that the defendants, Tate, Lasater and Bible, in taking the bond acted willfully and maliciously, or in a manner from which the law implies malice. These allegations are all expressly denied in the answers of the defendants, and there is no proof to sustain them. The bond was no doubt taken by the justices, as all of them say in their answers and one of them testifies, in ignorance of the requirement of the statute in relation to the number of sureties. The question is, therefore, narrowed down to the point whether malice can be inferred from the mere failure of the justices to require more than one surety. The answer is, perhaps, not difficult, but it is unnecessary to make it. For, the surety taken being at the time good for the penalty of the bond, and, so far as appears, continuing solvent to the present time, and there being no proof of actual loss or damage, all that the complainant could in any event recover would be nominal damages, which might carry the costs. But the chancellor taxed these defendants with the costs of their part of the case, and the complainant has had all the recovery he was entitled to.

The decree of the chancellor will be affirmed, and the complainant will pay the costs of this court, the costs below to be paid as adjudged by the chancellor.